IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:20-cr-00238-RJC-DSC |
| | ) | |
| vs. | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM AND MOTION** |
| DAVID GABRIEL CANALS-LOPEZ, | ) | **FOR DOWNWARD VARIANCE** |
| AKA: DAVID GABRIEL CANALS | ) | |
| Defendant. | ) | |
| | ) | |

Defendant David Gabriel Canals submits this Sentencing Memorandum to assist the Court in fashioning an appropriate sentence. Mr. Canals asks this Court to vary downward from the advisory guidelines range in light of the factors set out in 18 U.S.C. §3553 and impose a sentence consistent with this request.

## INTRODUCTION

A sentence in the range called for by strict application of the guidelines(97-121 months) would be unduly harsh and would exceed the punishment required to achieve the legitimate purposes of sentencing as set forth in 18 U.S.C. §3553. Certainly Mr. Canals accepts responsibility and will be punished; the question is degree. Should he, a 27 year-old individual with no criminal history, receive a sentence that will imprison him for a great deal of his life?

After agents in mid-2018 approached him, Mr. Canals acknowledged that he had a problem and admitted his guilt. Since that time and before his criminal record has been spotless. There is absolutely no indication that Mr. Canals has ever physically mistreated a child in any

1

way. He has consistently lived with his mother, father and younger sister with whom he is close. Mr. Canals' offense conduct was limited to his home computer. He did not create any of the material at issue. While the material is admittedly deeply disturbing and the creation and transmission of it victimized children; Mr. Canals' involvement was only to view and transmit by computer the material created by others. He was not creating or selling. This is not to excuse having anything to do with such material, but to give the Court a reference point for where this case falls in the universe of child pornography offenses.

## BACKGROUND

Mr. Canals is scheduled to appear before this Court and be sentenced on October 22, 2021. On August 17, 2020, he entered a plea of Guilty, pursuant to a plea agreement, to one count of Possession of Child Pornography Involving a Prepubescent Minor and a Minor Who Had Not Attained 12 Years Of Age U.S.C. §2252A(a)(5)(B). On October 19, 2020, Probation filed its final Presentence Report which tracks the parties' agreement, resulting in a total adjusted Offense Level of 30. The PSR also finds that Mr. Canals has zero criminal history points, putting him in Criminal History Category I. The resulting advisory guideline range for Mr. Canals' sentence is calculated at 97 to 121 months.

On June 28, 2018, law enforcement officials arrived at Mr. Canals' home in Charlotte with a search warrant. There they questioned him and his family about their computer use. Mr. Canals fully cooperated with the officials, acknowledged that he had viewed images of child pornography on his computer and consented to a search of his computer. After his confession he retained counsel and waited for law enforcement to act.

There is no suggestion or indication that during the over three years time after law enforcement approached Mr. Canals and seized his computer that he has been further involved in

2

any criminal activity relating to child pornography or computers.  During the years after the seizure of the computer but before his guilty plea, he was not restricted in any meaningful sense.  Certainly, if the government thought he was a threat during this period of time, some action would have been taken, but none was.  The case is a simple one and the government had all it needed to bring the case when the computer was seized and Mr. Canals confessed in 2018.

**ARGUMENT**

**I.    The Recommended Sentence under § 2G2.2 is Seriously Flawed and Excessive**

The starting point in fashioning a sentence is to consider the Sentencing Guidelines found at U.S.S.G. § 2g2.[1]  See Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 574, 169 L.E.d.2d 481 (2007).  Based on those guidelines, the presentence report recommends that Mr. Canals, a first-time offender, should be sentenced to between 97 and 121 months incarceration.

Such a sentence is far greater than necessary to satisfy the goals and purposes of sentencing—to "punish the defendant, to deter him and others from future crimes, to incapacitate the defendant in order to protect the public, and to rehabilitate the defendant."  United States v. McCracken, 667 F. Supp.2d 675, 678(W.D.Va 2009) (citing United States v. Raby, 575 F.3d 376, 380 (4th Cir. 2009).  Furthermore, the harsh sentence guidelines of §2G2.2 are not based on past practice or empirical data and have been rejected by many sentencing courts in cases similar to this one.

Courts around the country have recognized the irrationality of the child pornography guidelines.  In FY 2011, for example, 62.8% of defendant's sentenced for non-production

---

[1] Although the Court is already familiar with many of the relevant arguments, so long as U.S.S.G. § 2G2.2 is the governing guideline the case law pointing out the flaws in this guideline bears mention.

3

offenses under U.S.S.G. §2G2.2 received sentences **below** their applicable guidelines.[2] See Executive Summary of the United States Sentencing Commission Report to Congress dated February 27, 2013.[3] Reasons courts have rejected the harshness of the guideline, and this Court should as well, follow.

A. Historical Background of U.S.S.G. § 2G2.2

When the Sentencing Guidelines were enacted in 1987, only trafficking in child pornography was covered by the guidelines. Alan Ellis and Karen Landau, *Child Pornography Guidelines Are Ripe For Challenge*, Criminal Justice, Vol. 24, No. 2, Page 1, Summer 2009 (citing U.S.S.G. § 2G2.4 (1990). Three years later the Sentencing Guidelines were expanded to cover possession, setting a base offense level 10, with one possible two level enhancement for images of minors under age 12. Id.

Since its enactment, the guideline for possession and trafficking of child pornography have undergone eleven(11) amendments, resulting in an average *annual* increase in sentences imposed by over seven months. Id. At 1; Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, at 3 (2009). These amendments are exceptional in that they are the result of congressional directives rather than the result of penalogical and sociological expert study. See Ellis and Landau at 1. More exceptional still is that these increasingly severe and harsh increases "were largely the consequence of numerous morality earmarks, slipped into large bills over the last fifteen years, often without notice, debate or study of any kind. Congressionally mandated changes were even enacted to prevent the Commission from implementing carefully considered modifications which would have lowered applicable offense levels." Id.; United States v. Shipley, 560 F.Supp.2d 739,

---
[2] The defense has searched for updated data but has been unsuccessful.
[3] https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses

4

744 (S.D. Iowa 2008) ("These modifications do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses.") Moreover, these arbitrary increases "destroyed some of the careful distinction the [Sentencing] Commission had drawn between true peddlers of child pornography and more simple possessors or transporters." United States v. Hanson, 561 F.Supp.2d 1004, 1009 (E.D. Wisc. 2008). "Despite objections by the Sentencing Commission, the Chairman of the House Committee on the Judiciary, the Judicial Conference of the United States, and the American Bar Association, that those changes were being made without adequate review and analysis, The PROTECT Act became law on April 30, 2003." United States v. Hanson, 561 F. Supp.2d 1004 (E.D. Wisc.2008).

Numerous judges have recognized the injustice which results from excessively high guidelines set purely as a result of politics rather than through the United States Sentencing Commission, with its specialized mandate and experience, working with the benefit of empirical evidence and study. As noted by one Court:

> Congress established the Sentencing Commission to "formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role. Kimbrough, 552 U.S. at---, 128 S.Ct. at 574 (noting the key role preserved for the Sentencing Commission); Rita v. United States, 551 U.S.at---, 127 S.Ct. at 2564. In that institutional role, the Sentencing Commission "has the capacity courts lack to 'base its determination on empirical data and national expertise, guided by a professional staff with appropriate expertise.'" Kimbrough, 552 U.S. at---128 S.Ct. at 564(*quoting* United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)); see also Gall, 552 U.S. at---,128 S.Ct. at 594(noting that "even though the Guidelines are advisory rather than mandatory, they are…the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").
>
> However, when Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve §

5

3553(a)'s objectives.'" See e.g., Kimbrough, 552 U.S. at---,128 S.Ct. at 574(*quoting* Rita, 551 U.S. at---127 S.Ct. at 2465): see also Gall, 552 U.S. at ---, 128 S.Ct. at 594 n. 2(noting that not all Guidelines are tied to empirical evidence, most notably, those for drug offenses). In cases involving application of Guidelines that "do not exemplify the Commission's exercise of it characteristic institutional role," it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case Kimbrough, 552 U.S.at---, 128 S.Ct. at 575.

Congress established the Sentencing Commission to "formulate and constantly refine national sentencing standards," in fulfillment of institutional role. Kimbrough, 552 U.S. at---,128 S.Ct. at 574(noting the key role preserved for the Sentencing Commission); Rita v. United States, 551 U.S. at---, 127 S.Ct. at 2564. In that institutional role, the Sentencing Commission "has the capacity courts lack to 'base its determination on empirical data and national experience, guided by a professional staff with appropriate expertise." Kimbrough, 552 U.S. at---, 128 S.Ct. at 574(*quoting* United State v. Pruitt, 502 E=F.3d 1154, 1171 (10th Cir. 2007)(McConnell, J., concurring)); see also Gall, 552 U.S. at ---128 S.Ct. at 594(noting that "even though the Guidelines are advisory rather than mandatory, they are…the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").

However, when Guidelines are not the result of "the Commission's exercise of its characteristic institutional roles," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentence range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" See e.g. Kimbrough, 552 U.S. at---, 128 S.Ct. at 574(*quoting* Rita, 551 U.S. at---, 127 S.Ct. at 2465); see also Gall, 552 U.S. U.S at---, 128 S.Ct. at 594 n.2(noting that not all Guidelines are tied to empirical evidence, most notably, those for drug offenses). In cases involving application of Guidelines

6

that "do not exemplify the Commission's exercise of its characteristic institutional role," it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline" yields a sentence 'greater that necessary' to achieve § 3553(a)'s purposes even in a mine-run case." Kimbrough, 552 U.S. at---, 128 S.Ct. at 575; United States v. Baird, 580 F.Supp.2d 889, 892 (D. Neb. 2008).

One example of the lack of attention and study in enacting these politically motivated amendments is the two level enhancement for the use of a computer. U.S.C.G. § 2G2(b)(6). The Sentencing Commission has publicly questioned this enhancement because "online pornography comes from the same pool of images that can be found in specialty magazines or adult bookstores," and the enhancement does not differentiate based on the matter or extent to which the use of a computer facilitated the offense. See H.R. Rep. 104th Congr., 1st Sess.3-4 (1995) as reprinted in 19966 U.S.C.C.A.N. 759. The enhancement applies equally to someone who uses a computer to set up a sophisticated and extensive network of illicit pornography with a large number of subscribers as it does to someone such as Mr. Canals, whose offense conduct involves transmission of images to or from a solitary sender. Further the enhancement does not differentiate between defendants who use a computer to provide the images to children or to entice children-two of the reasons for enacting the enhancement. Reluctantly adding the enhancement to the final version of Sex Crimes Against Children Act of 1995, and knowing that the enhancement would apply in virtually every case, the Sentencing Commission stated that "[n]ot all computer use is equal…[and] sentencing policy should be sensitive to these differences in culpability so that punishments are tailored to fit the circumstances of each individual's case." Id. at 29. Here, the two level enhancement means that Mr. Canals' minimum advisory guideline sentence goes from 78 months to 97 months-over a year and a half incarceration-simply because

7

he used a computer to commit the offense.

B. <u>Application and Case Law</u>

In fashioning a sentence that is sufficient, but not greater than necessary, a sentencing judge "may not presume that the Guidelines range is reasonable," but rather must "make an individualized assessment based on the facts presented." <u>Gall v. United States</u>, 128 S.Ct. 586, 597 (2007). When the Guidelines are not empirically grounded-that is, without study or the support of empirical data demonstrating the penalogical value of increases in sentencing severity-the Guidelines are even less reliable as a sentencing tool, and a sentencing judge is even free to depart from them based on *policy* disagreement. <u>Kimbrough v. United States</u>, 128 S.Ct. 558, 574 (2007); <u>Spears v. United States</u>, 129 S.Ct. 840, 843 (2009); <u>Shipley</u>, 560 F.Supp.2d 739, 744 (S.D. Iowa 2008). Again this may be one reason federal judges are sentencing those convicted of child pornography offenses below the § 2G2.2 guidelines in over half of such cases.

A main concern for judges across the nation is that, due to Congress' haphazard modifications of § 2G2.2 based on political motives and not study, the Guidelines provide for excessive and unreasonable sentences in many cases. The primary reason is that the many specific offense characteristics almost always apply, and they operate to exponentially increase an offender's recommended guideline sentence. The specific offense characteristics are, therefore, not a reflection of genuinely aggravating factors. Courts across the country have taken note and refused to give deference to the Guidelines, fashioning sentences below the Guideline range. See e.g., <u>United States v. Grober</u>, 595 F.Supp.2d 382, 392-93 (D.N.J. 2008); <u>United States v. Cruickshank</u>, 667 F.Supp.2d 697, 702 (S.D. W.Va. 2009). Many of these Courts have relied upon the careful review and study of Federal Public Defender Troy Stabenow in their conclusion, citing the following argument:

> The flaw with U.S.S.G. § 2G2.2 today is that the average defendant charts at the statutory maximum, regardless of acceptance of responsibility or Criminal History. As noted by the Guidelines Commission, there are "several specific offense characteristics which are expected to apply in almost every case(e.g. the use of computer, material involving children under 12 years of age, number of images). "*See* Amendment 664, U.S.S.G. App.C "Reason for Amendment", (November 1, 2004). The internet provides the typical means of obtaining child pornography resulting in a two level enhancement. *See* U.S.S.G. § 2G2.2(b)(6). Furthermore, as a result of internet swapping, defendants readily obtain 600 images with minimal effort, resulting in a five-level increase. *See* U.S.S.G. § 2G2.2(b)(7)(D). The 2004 Guidelines created an Application Note defining any video-clip as creating 75 images. *See* U.S.S.G. § 2G2.2(b)(2), (4). Thus one email containing eight, three-second video clips would also trigger a five-level increase. Undoubtedly, as the Commission recognized, some of these images will contain material involving a prepubescent minor and/material involving depictions of violence (which may not include "violence" per se, but simply consist of the prepubescent minor engaged in a sex act), thereby requiring an additional six-level increase. *See* U.S.S.G. § 2G2.2(b)(3)(B). Thus, an individual who swapped a single picture, and was only engaged in viewing and receiving child pornography for a few hours, can quickly obtain an offense level of 40. Even after Acceptance of Responsibility, an individual with no prior criminal history can quickly reach a Guideline Range of 210-262 months, where the statutory maximum caps the sentence at 240 months. *See* U.S.S.G. § 5G1.1(a). The results are illogical; Congress set the statutory range for first time distributors as five to twenty years. Congress could not have intended for the average first time offender with no criminal history to receive a sentence of 210 to 240 months. An individual with a Criminal History Category of II faces a Guideline range of 235 to 240 months, and any higher Criminal History score mandates the statutory maximum. These results run contrary not only to Congressional will, but also to principal Guideline policy-providing harsher penalties to individuals with more significant Criminal History scores while still retaining an incentive for please at al Criminal History levels.

United States v. Hanson, 561 F.Supp.2d 1004. 1010-11 (E.D.Wisc. 2008) (quoting Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (July 3, 2008) 23-24).

Indeed, the irrational, outdated and unduly harsh nature of the guideline has been noted by the Sentencing Commission itself:

> [F]our of the six sentencing enhancements in § 2G2.2-those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels-now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability. These enhancements originally were promulgated in an earlier technological era, when such factors better served to distinguish among offenders. Indeed, most of the enhancements in §2G2.2, in their current or antecedent versions, were promulgated when

9

the typical offender obtained child pornography in printed form in the mail. Executive Summary of the United States Sentencing Commission Report to Congress dated February 27, 2013 at iii.

And although the variance requested in this case- - to a sentence that does not include additional incarceration- - is significantly less than the advisory guideline range, it would hardly be the first time a court fashioned such a sentence in this circumstance. United States v. E.L., 188 F. Supp. 3d 152, 2016 U.S. Dist. LEXIS 66063 (E.D.N.Y. May 19, 2016), citing United States v. R.V., 2016 U.S. Dist. LEXIS 7717, 2016 WL 270257 (E.D.N.Y. 2016) (imposing a sentence of time served and seven years of supervised release); United States v. Autery, 555 F.3d 864, 867 (9th Cir. 2009) (affirming non-Guidelines sentence of five years of probation for possession of child pornography); United States v. Stall, 581 F.3d 276, 277-78 (6th Cir. 2009) (affirming non-Guidelines sentence of one day of incarceration followed by ten-year period of supervised release for defendant convicted of two counts of possession of child pornography); United States v. Prisel, 316 F. App'x 377, 378 (6th Cir. 2008) (affirming non-Guidelines sentence of one day in prison followed by eighteen months of home confinement for possession of child pornography); United States v. Rowan, 530 F.3d 379, 380 (5th Cir. 2008) (affirming non-Guidelines sentence of five years of probation and no period of incarceration for possession of child pornography); United States v. Polito, 215 F. App'x 354, 355 (5th Cir. 2007) (per curiam) (affirming non-Guidelines sentence of five years of probation with one year of house arrest for possession of child pornography); United States v. Crespo-Rios, No. 08-CR-208, 2015 U.S. Dist. LEXIS 144498, 2015 WL 6394256, at *1 (D.P.R. Oct. 19, 2015) ("[R]esentencing Defendant to the same sentence—that is, time served followed by a long period of supervised release—is justified in view of each of the sentencing factors outlined in 18 U.S.C. § 3553."); United States v.

10

Mallatt, No. 13-CR-3005, 2013 U.S. Dist. LEXIS 168777, 2013 WL 6196946, at *13 (D. Neb. Nov. 27, 2013) (finding that, for defendant convicted of one count of possession of child pornography, "sentence of time served, followed by six years of supervision with special conditions including intensive treatment is adequate to fulfill the goals of sentencing . . ."); United States v. Evren, No. 10-CR-131 (E.D.N.Y. Feb. 26, 2013) (ECF No. 59) (imposing non-Guidelines sentence of three years of probation for defendant who pleaded guilty to one count of possession of child pornography); United States v. Diaz, 720 F. Supp. 2d 1039, 1048 (E.D. Wis. 2010) (imposing non-Guidelines sentence of six months of incarceration followed by twelve years supervised release); United States v. Meillier, 650 F. Supp. 2d 887, 887 (D. Minn. 2009) (imposing non-Guidelines sentence of one day of confinement followed by thirty years of supervised release on defendant convicted of possession of child pornography); United States v. Boyden, No. 06-CR-20243, 2007 U.S. Dist. LEXIS 43048, 2007 WL 1725402, at *10 (E.D. Mich. June 14, 2007) (imposing non-Guidelines sentence of one day of confinement followed by three years of supervised release, the first year of which to be served in a community correctional facility).

**II.     Because Of The Flaws Of § 2G2.2, The Court Should Not Apply The Guideline Range, But Rather Be Guided By The 3553(a) Factors.**

After considering the Guidelines, a sentencing court must "filter[] the Guidelines' general advice through § 3553(a)'s list of factors" to reach a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing: punishment, deterrence, and protection of the public. Rita v. United States, 127 S. Ct. 2456, 2469 (2007); 18 U.S.C. § 3553(a)(2); United States v. Cruikshank, 667 F.Supp.2d 697, 699 (S.D.W. Va. 2009). The sentencing court is

11

tasked with fashioning an appropriate sentence only after considering § 3553(a)'s list of factors, because the sentencing judge is in a better position than the Sentencing Commission or Congress to gain familiarity with the individual defendant and case. <u>Rita</u>, 127 S. Ct. at 2569. The factors to be considered under § 3553(a) are:

 (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

 (2) the need for the sentence imposed –

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;

 (3) the kinds of sentences available;

 (4) the advisory guideline range;

 (5) any pertinent policy statements issued by the Sentencing Commission;

 (6) the need to avoid unwarranted sentence disparities; and

 (7) the need to provide restitution to any victims of the offense.

 A. <u>Nature of Offense</u>

First and foremost, Canals never used the pictures that he downloaded from the internet to entice a child, and he never produced any pictures. Furthermore, there is no indication that Mr. Canals has ever had any improper contact with any child, or ever even attempted any such contact with a child.

In the previously cited <u>Hahn</u> opinion, the United States District Court for the District of Nebraska has described the spectrum of child exploitation offenses as follows:

12

> A possessor of child pornography is the least culpable in the chain
> and is a marginal player in the overall child exploitation scheme.
> The varying levels of participation and blameworthiness in
> connection with distribution are meant to be accounted for in the
> Guidelines' market-oriented scheme. It is clear that the statutes
> criminalizing possession and distribution of child pornography are
> aimed at the widespread and profit-driven dissemination of child
> pornography that the Internet facilitates and fosters. Although file-
> sharing arrangements help facilitate Internet trafficking in child
> pornography, there is a qualitative difference between sharing
> one's computer files and selling child pornography for profit. This
> case does not involve any widespread distribution of child
> pornography or any pecuniary gain. Although the evidence shows
> that [defendant] distributed or shared files with at least one other
> person, the evidence does not show any large distribution network.
> [Defendant] did not possess child pornography in order to entice a
> child nor is there any indication that he has ever had any improper
> contact with an actual child, that he photographed minors engaged
> in sexual conduct, or ever made attempts to contact or entice a
> child. [Defendant] is a low-level consumer and somewhat
> inadvertent distributor of child pornography whose sentence
> should fall closer to the low end of the statutory range than to the
> maximum.

Hahn, 2011 WL 23083 at *9. Mr. Canals' case shares many, if not all, of the same mitigating features as those present in Hahn.

    B.    <u>History and Character of Mr. Canals.</u>

*1. Mr. Canals, though the victim of sexual abuse, has made a positive impact on those around him.*

Mr. Canals reports that he was the victim of sexual abuse when he was seven years old. This act was perpetrated by a family member. Mr. Canals did not tell anyone about this and it stayed repressed in his memory until recently. After his arrest for this offense he met with a therapist and discussed what occurred for the first time after 18 years.[4] Mr. Canals has come to understand the traumatic affect this incident has had on his life. Mr. Canals does not use this as the sole excuse for his offenses but he now sees how this led him to seek sexual gratification

---

[4] Exhibit A

from the internet and Mr. Canals wishes to continue with therapy to deeply examine and remove the negative consequences the sexual abuse left in him.

By way of educational background, Mr. Canals graduated from Providence High School in Charlotte, NC and received an Associate's Degree in Arts from Central Piedmont Community College in 2014. He also attended the University of North Carolina at Charlotte from 2015-2017. Prior to this case he worked several jobs and was hoping to return to college to obtain a degree in computer programming or related curriculum and develop a career in this field. Mr. Canals was living with his mother, father and younger sister before his incarceration.

Phrases friends and family use to describe Mr. Canals include "dedicated, smart and honest,"[5] "loyal, forgiving and understanding,"[6] "dedicated and a hard worker"[7] "responsible and noble"[8] and "generous and caring."[9]

Regarding his commitment to family Mr. Canals' sister, Rocio Canals, offers the following:

> My whole life Dave has been the one and only person that I have always known would be there for me…Dave was always the one to be there for me most closely; and he never complained and he never judged me and he always just wanted to help me to be happy and find my own place in the world. In the time following my 17th birthday Dave did nothing if not stay positive for our sake. We spent time making him feel loved and supported so he wouldn't feel ashamed to reach out for professional help…Dave may have started out as my best friend. But in reality he's like a father figure to me. And with him gone I feel like I'm missing a huge part of my life. I do talk to him over the phone a lot and it helps, but it has still been a lot like I'm grieving and it's been really hard…I look forward to having him back in my life every single day.[10]

In a similar vein, Girish Bose, a friend of Mr. Canals states:

> He has been a loyal friend to me, a loving member of his family, an active member of his church, and an upstanding member of his community. I have watched him go out of his way to help those in need, offering food, money, and

---

[5] Exhibit B
[6] Exhibit C
[7] Exhibit D
[8] Exhibit E
[9] Exhibit F
[10] Exhibit G

transportation to complete strangers for no reason other than because they asked. I have watched him show forgiveness and understanding to people who have hurt him..[11]

Mr. Canals' uncle and an attorney in Puerto Rico, Miguel Canals, attests to his character as well:

How I would describe David Gabriel? Honest. Smart. Dedicated to his studies. Man of few words. Hard worker. Talented musician. Loving son and brother.[12]

All letters referred to above attesting to Mr. Canals' exemplary history and characteristics are attached for the Court's consideration.

    2.    *Mr. Canals poses minimal risk to children.*

The previously referenced 2013 report of the Sentencing Commission to Congress indicates that sentencing decisions in child pornography cases, and the risk an offender poses to children, should be influenced by three main considerations: (i) the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the age of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technologies); (ii) the degree of an offender's involvement with other offenders — in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and (iii) whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

Travis Bradey, a therapist referenced above in Exhibit A states:

It was discovered that Mr. Canals has a history of trauma and abuse with identified periods of creation neglect. These items as I have described have been

---

[11] Exhibit C
[12] Exhibit D

normalized or minimalized by the ecology of my client's primary support resulting two factors: Mr. Canals developed, an ultimately self-inflicted, alienation from feelings of unworthiness and defectiveness, Mr. Canals also failed to develop any healthy coping skills or effective processing of his experiences.

Furthermore in regard to (iii), Mr. Bradey states:

Mr. Canals had ample opportunity to perpetrate on his much younger sister as she was a child when this obsessive-compulsive behavior sequence was occurring. Neither he nor his sister or family report any abuse or atypical behavior that are clinical red flags of suspected abuse…My clinical recommendation is that Mr. Canals commit to a long-term treatment program with minimal term defined by the facility based on sustainable full recovery from his addiction and effective self management of his illness.

3. *As a first-time offender, Mr. Canals has a low risk of recidivism.*

Mr. Canals is a first-time offender – a powerful prediction of his disinclination to reoffend and further evidence that the Guidelines overstate the need for incapacitation and specific deterrence in this case. As part of its Fifteen Year Report, the Sentencing Commission undertook a massive study into predicting recidivism and how to effectively consider recidivism rates in imposing a just sentence. See U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (2004). In its study, the Commission found that a defendant's criminal history points are a powerful predictor of future risk for recidivism. With zero criminal history points, Mr. Canals presents only a little more than a 10% risk of recidivism in the first 24 months following release; by contrast, offenders with one criminal history point (but which are in Mr. Canals' criminal history category) have twice his recidivism rate. Id., at 7 and 23 (2004). Mr. Canals is thus an improbable re-offender.

In response to the findings of the Sentencing Commission regarding recidivism, courts have taken first-offender status into account when fashioning an appropriate sentence under 18 U.S.C. § 3553(a). See, e.g., United States v. Darway, 255 Fed. Appx. 68, 73 (6th Cir. 2007) (upholding sentence in child pornography case as reasonable where district court granted

16

downward variance based on defendant's first-offender status; United States v. Cabrera, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants, like Mr. Canals, "with zero criminal history points are less likely to recidivate than all other offenders").

Moreover, in terms of likelihood for recidivism, there is no quantitative difference between the imposition of a guideline range sentence and a downward departure sentence. See U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 14 and 31 (2004) (overall recidivism rates for within guidelines sentence is 23.3% compared with 23% for downward departure sentences). An unduly harsh guideline sentence, as opposed to a more reasonable downward departure sentence, therefore, does not correlate with deterrence.

## CONCLUSION

For the reasons stated herein, Mr. Canals requests that this Court consider the applicable sentencing guidelines, the statutory factors enumerated in 18 U.S.C. § 3553(a), and the requested grounds for a variance, and sentence him to a term of probation.

This the 6th day of October 2021.

Respectfully submitted,

s/ Jacob E. Setzer_____
Jacob E. Setzer, Attorney at LAw
1705 Logie Ave.
Charlotte, NC 28205
Phone: (704) 604-3532
Fax: (704) 257-0321
jeslaw@earthlink.net
NC Bar No. 32922

COUNSEL FOR MR. CANALS

# CERTIFICATE OF SERVICE

I certify that I have served the foregoing **SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE** on opposing counsel by submitting a copy thereof through Electronic Case Filing, to be sent to:

> Alfredo DeLaRosa
> Alfredo.De.La.Rosa@usdoj.gov

This the 6th day of October, 2021.

> s/ Jacob E. Setzer_____
> Jacob E. Setzer